**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| **BLAIR HOUSE ASSOCIATES** ) | Case No. 21-20110 |
| **LIMITED PARTNERSHIP**. ) | |
| ) | |

**FURTHER ORDER ON REQUEST FOR AWARD OF**
**ATTORNEY'S FEES AND PUNITIVE DAMAGES**

Forcing a party into a bankruptcy liquidation against its will is an extraordinary measure. To prevent creditors from abusing this process, Congress created remedies. Here, Ellen Hancock, as the trustee of the Hillman Mather Adams Norberg Trust, improperly instigated the liquidation of Blair House Associates Limited Partnership. Therefore, she, in her capacity as the trustee of the Hillman Mather Adams Norberg Trust is liable to Blair House for attorney's fees of $48,030 and $100,000 in punitive damages.

**INTRODUCTION**

On May 5, 2021, Ellen Hancock (Ms. Hancock), as Trustee of the Hillman Mather Adams Norberg Trust (the "Trust"), commenced this involuntary bankruptcy liquidation against Blair House Associates Limited Partnership ("Blair House"). (Docket Entry ("D.E.") 1). The Trust is a limited partner of Blair House. General Holdings, Inc. ("General Holdings"), which maintains that it is Blair House's sole general partner, sought dismissal of the petition. (D.E. 4, 14, 15, 16, 17 and 18). After oral argument on June 23, 2021, the Court dismissed the involuntary petition. (D.E. 22).

On August 17, 2021, the Court granted General Holdings' motion for an award of attorney's fees and punitive damages on behalf of Blair House and against Ms. Hancock. In doing so, the Court applied the standards set forth in In re K.P. Enterprise, 135 B.R. 174, 177

1

(Bankr. D. Me. 1992) and held that Ms. Hancock's commencement of this involuntary bankruptcy proceeding against Blair House was in bad faith and that an award of fees and punitive damages was appropriate. (D.E. 29). The Court instructed the parties to confer to see if they could reach a compromise on the amount of the award, and if they could not, Blair House was ordered to file papers in support of its claim for attorney's fees and punitive damages. (D.E. 31).

The parties failed to reach an agreement, and, on behalf of Blair House, General Holdings submitted papers, including the affidavit of James D. Poliquin, Esq., dated September 15, 2021, and billing statements in support of its claim for an award of $48,030 in fees and $100,000 in punitive damages. (D.E. 33). The Trust objected.[1] (D.E. 34).

## DISCUSSION

The Bankruptcy Code provides several varieties of relief to a putative debtor when it is forced into bankruptcy improperly: the award of attorney's fees and costs regardless of the intent of the petitioner; and the award of actual and punitive damages if the petitioner acted in bad faith.

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment-- (1) against the petitioners and in favor of the debtor for-- (A) costs; or (B) a reasonable attorney's fee; or (2) against any petitioner that filed the petition in bad faith, for-- (A) any damages proximately caused by such filing; or (B) punitive damages.

---

[1] The Trust also leveled counterclaims and cross claims against Blair House, General Holdings, Rosa Scarcelli and Thomas Rhodes and filed a motion to withdraw the reference of this case in the United States District Court for the District of Maine (D.E. 34 and D.E. 35). The Trust's counterclaims and crossclaims are not appropriately raised here and are dismissed, without prejudice. In the context of a challenge to an involuntary petition "[n]o other pleadings shall be permitted, except that the court may order a reply to an answer and prescribe the time for filing and service . . .". F.R.Bankr.P. 1011(e). As for its motion to withdraw the reference, Chief Judge Levy denied it on February 15, 2022. Hancock v. Blair House Associates Limited Partnership, et al., 2:21-mc-270-JDL (the "District Court Case") Docket Entry No.: 9 (D. Me. February 15, 2022).

2

11 U.S.C. § 303 (i).[2]

The use of the word "or" does not limit the availability of these remedies: in appropriate circumstances a court may impose costs, reasonable attorney's fees, and damages.  K.P. Enterprise, 135 B.R. at 177; Kenneth N. Klee, *Legislative History of the New Bankruptcy Code*, 54 AM. BANKR. L.J. 275, 296-297 (1980); § 14:32 HON. JOAN M. FEENEY, ET AL., 2 BANKRUPTCY LAW MANUAL § 14:32 (5th ed. 2021-2022).  An award under § 303(i) lies in the discretion of the bankruptcy court.  In Re K.P. Enterprise, 135 B.R. at 177.

The award of fees, costs or damages is only appropriate if (1) the court dismisses the petition, (2) the petitioning creditors and debtor did not consent to the dismissal, and (3) the debtor did not waive the right to obtain relief under § 303(i).  There is no dispute that the first two conditions were met: the Court dismissed the petition over the Trust's objections.

The Trust maintains, however, that Articles 6.6(a), 6.8, 6.9 and 7.1 of the Second Amended and Restated Limited Partnership Agreement of Blair House Associates Limited Partnership dated November 1, 1993 (D.E. 26-1) operate as a waiver by Blair House of a § 303(i) award.  This argument is unpersuasive.

> Waiver is a voluntary or intentional relinquishment of a known right and may be inferred from the acts of the waiving party. . .  If a party in knowing possession of a right acts inconsistently with the right or that party's intention to rely on it, the right is deemed waived. . . To bar enforcement of a known right, the waiver, however established, must have induced a belief in the party who is claiming reliance on that waiver that the waiving party intended voluntarily to relinquish his rights.

Blue Star Corp. v. CKF Properties, LLC, 980 A.2d 1270, 1277 (Me. 2009) (internal citations and quotations omitted); Portland Dev. Corp. v. M/V Nova Star, 2016 WL 4660914, at *4 (D. Me.

---

[2] References to "§ ____" in this opinion are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq., as amended (the "Bankruptcy Code").

3

Sept. 7, 2016); In re Mitchell, 2012 WL 5995443, at *10 (10th Cir. BAP (Colo.) Dec. 3, 2012), aff'd, 554 Fed. Appx. 756 (10th Cir. 2014) (Settlement agreement between parties specifically released all claims relating to the involuntary case, including "any claims that may be brought under 11 U.S.C. § 303(i) which claims are specifically waived . . .").

Putting aside the broader question of whether such a contractual relationship could ever divest a court of its inherent and statutory powers to protect the orderly and appropriate conduct of its business, to enforce or implement court orders or rules, or to prevent an abuse of process, there is absolutely nothing in Articles 6.6(a), 6.8, 6.9 and 7.1 of the limited partnership agreement, nor anywhere else within the agreement, that manifests any intent by Blair House to specifically forgo the right to an award under § 303(i).

With all three preconditions to the entry of an award under § 303(i) having been satisfied, the Court addresses the attorney's fee award first.

### A. The Award of Attorney's Fees.

It is well-established in this district that, generally, a debtor who succeeds in the dismissal of an involuntary petition will be awarded its fees. K.P. Enterprises., 135 B.R. at 177 This Court already determined that an award of fees was appropriate given that it was not reasonable for Ms. Hancock to believe that the amounts the Trust claimed that Blair House owed to it were not contingent or subject to a bona fide dispute, as is required by § 303(b)(2).

Thus, the sole remaining issue as to attorney's fees is whether the amount sought on behalf of Blair House is reasonable.[3]

---

[3] The Trust raises several arguments as to why the fees and costs incurred in defending against the Involuntary Petition and Amended Involuntary Petition cannot be recovered under § 303(i). They include: (i) only a debtor may recover under § 303(i) and it was General Holdings, not Blair House, that incurred the fees and costs associated with defending against this action, (ii) General Holdings is precluded under the terms of the partnership agreement from seeking indemnification from the Trust, and (iii) General Holdings is not a general partner of Blair House. The Court does not find any of these arguments persuasive; they merely muddy the waters with state law partnership disputes which are not before this Court. The Court had no difficulty understanding that General Holdings was

4

Reasonable hourly rates vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria. United States v. One Star Class Sloop Sailboat, 546 F.3d 26, 37–38 (1st Cir. 2008) (internal citations and quotations omitted); see also, In re Lopez, 405 B.R. 24, 30 (B.A.P. 1st Cir. 2009). This Court is familiar with the hourly rates of attorneys with similar levels of expertise and experience as Mr. Poliquin, Mr. Cummings and Mr. Geismer, given its regular review of fee applications, as well as its familiarity with the docket of bankruptcy cases in Maine. In re Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 8 (1st Cir. 1999); Fed.R.Evid. 201. The hourly rates of $300 charged on behalf of Blair House in this instance are very reasonable.

Similarly, the amount of time spent by Mr. Poliquin, Mr. Cummings, and Mr. Geismer, as set forth in Exhibit A to Mr. Poliquin's affidavit, was also reasonable given the circumstances created by Ms. Hancock's filing of the involuntary petition. The billing details submitted as Exhibit A to the Affidavit of James D. Poliquin (D.E. 33-1) describe reasonable and necessary services performed for the benefit of Blair House in both defending against the involuntary petition and managing the impact of that filing upon Blair House's regulatory obligations as well at its relationship with the U.S. Department of Agriculture Rural Development ("RD"). The cost of those services was unnecessarily amplified by the filing of an Amended Involuntary Petition in the eleventh hour changing the claims on which the proceeding was premised.

None of the defects other courts have found troubling are present in Exhibit A. *See, e.g.,* In re Navient Sols., LLC, 627 B.R. 581, 592 (Bankr. S.D.N.Y. 2021) (reduction of fee award because billing entries showed overstaffing, duplication of effort and insufficient detail).

---

acting on behalf of the putative debtor. Furthermore, none of the fees, costs or punitive damages being awarded by the Court today arise from the relative contractual positions of the parties but rather represent sanctions against a party for its abuse of bankruptcy process.

In addition to the fees supported by Exhibit A, Blair House asked for $3,000 of fees for services it anticipated needing after August 31, 2021 to bring this case to a close. At the rate of $300 per hour this amounts to 10 additional hours of services. This Court reviewed the docket in this case and the docket in the District Court Case. Blair House's request for an additional $3,000 is reasonable and will be awarded.

By commencing this proceeding, the Trust, through its representative, Ms. Hancock created an existential crisis which compelled Blair House to incur legal expenses. This Court, having reviewed Mr. Poliquin's affidavit and the attached time and billing entries, concludes, in light of the particulars of this case, that an award of $48,030 in legal fees against Ms. Hancock, in her capacity as Trustee of the Trust, is reasonable and appropriate.[4]

**B. The Award of Punitive Damages.**

The filing of an involuntary bankruptcy is "an extreme remedy with serious consequences to the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment." In re Reid, 773 F.2d 945, 946 (7th Cir.1985); s*ee also*, In re SBA Factors of Miami, Inc., 13 B.R. 99, 101 (Bankr. S.D. Fla. 1981); Higgins v. Vortex Fishing Sys., Inc., 379 F.3d 701, 707 (9th Cir.2004). To safeguard the intended purpose of involuntary proceedings, Congress granted courts discretion to award punitive damages against a petitioning creditor acting in bad faith. 11 U.S.C. § 303(i)(2). Nat'l Med. Imaging, LLC, 818 Fed. Appx. 129, 133–34 (3d Cir. 2020) (*quoting*, 2 COLLIER ON BANKRUPTCY ¶ 303.33

---

[4] In addition to the reasonableness of their hourly rates, the bifurcated approach recommended by Blair House's counsel and adopted by the Court – addressing the bona fide dispute issue first – compared to the approach urged by the Trust's counsel – conducting discovery and then addressing all of Blair House's challenges to the involuntary proceeding - was both effective and efficient and preempted the need for protracted litigation and significantly higher fees.

6

(16th ed. 2020)). In determining bad faith, courts examine the "totality of the circumstances," including factors such as:

> the creditors satisfied the statutory criteria for filing the petition; the involuntary petition was meritorious; the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing; there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets; the filing was motivated by ill will or a desire to harass; the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same; the filing was used as a tactical advantage in pending actions; the filing was used as a substitute for customary debt-collection procedures; and the filing had suspicious timing.

In re Forever Green Athletic Fields, Inc., 804 F.3d 328, 336 (3d Cir. 2015); *see also*, Nat'l Med. Imaging, 818 Fed. Appx. At 133–34.

Once a court finds bad faith warranting an award of punitive damages, the Court must fix the amount of damages, keeping in mind the dual purpose of: (1) punishing a creditor who invokes such a serious process without a reasonable basis for doing so; and (2) preventing further abuses of court. Nat'l Med. Imaging, 814 Fed. Appx. 691, 695 (3d Cir. 2020), *reh'g granted, judgment vacated*, 972 F.3d 343 (3d Cir. 2020), *cert. denied sub nom.* Nat'l Med. Imaging, LLC v. U.S. Bank, N.A., 141 S. Ct. 1693 (2021); s*ee also*, In re Silverman, 230 B.R. 46, 52 (Bankr. D.N.J. 1998). The Code does not provide an explicit formula for calculating punitive damages awarded under § 303(i)(2), but courts have found punitive damages of double, triple and, in some cases, quadruple compensatory damages to be an appropriate deterrence in a number of contexts. *See, e.g.,* State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003) (acknowledging a long legislative history "providing for sanctions of double, treble, or quadruple damages to deter and punish"); E.E.O.C. v. AutoZone, Inc., 707 F.3d 824, 839-40 (7th Cir. 2013) (punitive damage award of double the compensatory damages is "well within the range of constitutionally acceptable values"); In re Meltzer, 535 B.R. 803, 819–820 (Bankr. N.D. Ill. 2015) (punitive

damage award under § 303(i)(2)(B) of double the compensatory damages does "not begin to approach the constitutional outer limit.").

The Involuntary Petition filed by the Trust on May 5, 2021 was premised on two allegedly non-contingent claims that Ms. Hancock, on behalf of the Trust, asserted under penalties of perjury were not subject to bona fide dispute: "(1) Cash distributions owed by the Debtor to the Petitioner arising from operation of the Debtor prior to its dissolution, which unpaid cash distributions are in an amount not less than $17,262 [the "Cash Distribution Claim"]; and (2) a liquidating distribution owed by the Debtor to the Petitioner arising by reason of the dissolution of the Debtor, in an amount currently not known with certainty and believed to exceed $6,900,000.00 [the "Liquidating Distribution Claim"]." Involuntary Petition, Att. 1. (D.E. 1).

Blair House timely answered the Involuntary Petition, challenging the Trust's assertion that it held any non-contingent claims which were not the subject of a bona fide dispute. Following a status conference on June 4, 2021, the Court issued a scheduling order directing Blair House and the Trust to file briefs in support of their positions on or before June 18, 2021 and scheduling oral argument for June 22, 2021 (D.E. 12). More than a month after filing the Involuntary Petition, just four days before oral argument was scheduled to take place and on the same day briefs were due, the Trust filed an Amended Involuntary Petition, "waiving" its Cash Distribution Claim and assigning a value of $7,317,869.03 to its remaining Liquidation Distribution Claim. Amended Involuntary Petition, Att. 1 (D.E. 14).

General Holdings, which had undoubtedly already written its brief when the Trust filed its Amended Involuntary Petition just hours before, made the Court aware of litigation pending in state court under the case heading, <u>Richard Olson v. Pamela Gleichman, et al.</u>, Docket No.

BCD-CV-19-21, in which the Trust had crossclaimed against General Holdings for, among other things, unpaid cash distributions. General Holdings, Inc.'s Memorandum in Support of Dismissal of Involuntary Petition ("General Holdings Br."), Declaration of James Poliquin ("Poliquin Dec."), Exh. B (D.E. 16-1). General Holdings alleged, and the Trust did not deny, that the crossclaim remained pending as of the date on which the Trust commenced this Involuntary Proceeding and, further, that the Trust had not timely sought summary judgment on the claim for unpaid distributions, suggesting the existence of at least one disputed material fact. General Holdings Br. at 5-6. Therefore, while the Trust ultimately "waived" the Cash Distribution Claim in the Amended Involuntary Petition, General Holdings' uncontested characterization of the state court litigation clearly establishes that the Trust had no reasonable basis for contending in the first instance that the claim was not subject to bona fide dispute.

The idea that the Trust's Liquidation Distribution Claim is not subject to bona fide dispute is equally without merit. The Trust's contention that a substantial fire at the Blair House project in May 2020 caused a dissolution under the terms of the Second Amended and Restated Limited Partnership Agreement of Blair House Associates Limited Partnership (the "Partnership Agreement") relies upon a tortured interpretation of selective provisions curated to exclude critical language referencing regulatory limitations. General Holdings Br., Poliquin Dec., Exh. A (D.E. 16-1).

The Trust argues that the word "Sale," as defined in Article II of the Partnership Agreement, encompasses a casualty loss like the fire Blair House suffered and, therefore, the partnership dissolved pursuant to Article XI of the Partnership Agreement. Putting aside for the moment the fact that both Blair House and the Trust presented vastly differing interpretations of that definition, the Trust's argument is facially problematic because it ignores language

9

preventing dissolution or termination, even in the context of a sale, "if such termination would result in a violation of any law, regulation or regulatory agreement to which the Partnership is bound." Partnership Agreement, § 11.1.  A review of the Promissory Note, Security Agreement and the Loan Agreement make clear that the loan Blair House received from the Farmers Home Administration was conditioned upon the use of the proceeds to fund the development and maintenance of a subsidized housing project, that Blair House is obligated to continue operating the project for the entire term of the loan, and that the loan cannot be prepaid without the consent of RD.  General Holdings Br., Poliquin Dec., Exhs. C, D and F (D.E. 16-1).  When Section 11.1 of the Partnership Agreement is viewed through this lens, at the very *least*, the Trust's claim that Blair House is dissolved is plainly subject to bona fide dispute.[5]

      The ongoing state litigation and the overlay of federal regulations, on top of ambiguous contractual language, leave the Court with no doubt that the Trust knew that both the Cash Distribution Claim and the Liquidation Distribution Claim were the subject of bona fide disputes at the time it filed the Involuntary Petition.  The Trust's gamesmanship regarding the Cash Distribution Claim it "waived" at the eleventh hour and the dubious argument on which its alleged Liquidation Distribution Claim was premised, are, in themselves, enough to warrant punitive damages.  However, the timing of the Involuntary Petition leads the Court to the far more concerning conclusion that the Trust took this drastic step to gain leverage in a partnership dispute and to improperly evade an unfavorable regulatory decision.

---

[5]  The Court takes judicial notice that Ms. Hancock, as the trustee of the Trust, commenced an action against Blair House and General Holdings in the State of Maine Business and Consumer Court Docket No.: BCD-CIV-2021-0052 seeking, among other things a declaratory judgement that Blair House was automatically dissolved in May of 2020 and that General Holdings was automatically withdrawn as a partner in 2014.  See, United States v. Mercado, 412 F.3d 243, 247 (1st Cir. 2005); Butelho v. Buscone (In re Buscone), 634 B.R. 152, 158 n. 1 (B.A.P. 1st Cir. 2021)

The Trust filed the involuntary petition a little more than a month after the United States Department of Agriculture denied Blair House's request to use the insurance proceeds to prepay the RD loan and directed Blair House, over its objection, to rebuild the project. Answer to Involuntary Petition, Exh. B. The fact that the Trust filed commenced this proceeding so soon after receiving RD's decision leads this Court to the conclusion that the Trust cobbled together gossamer claims of unpaid distributions and dissolution in a blatant attempt to end run RD's authority. Such abuse of the bankruptcy process will not be tolerated by this Court. In re Nat'l Rifle Ass'n of America, 628 B.R. 262, 281-82 (Bankr. N.D. Tex. 2021).

The Trust asserts that the Court cannot find bad faith without taking evidence regarding Ms. Hancock's state of mind in commencing this case. The Court disagrees. The papers filed by the Trust speak for themselves and evidence a blind commitment to scorched earth litigation tactics. Courts regularly find bad faith where petitioning creditors file an involuntary petition while knowing their claims are in bona fide dispute. In re Meltzer, 516 B.R. 504, 517 (Bankr. N.D. Ill. 2014); In re John Richards Homes Bldg. Co., L.L.C., 439 F.3d 248, 261 (6th Cir. 2006); In re Silverman, 230 B.R. 46, 52 (Bankr. D.N.J. 1998); In re Forever Green Athletic Fields, Inc., 804 F.3d 328, 336-37 (3d Cir. 2015). No amount of evidence regarding Ms. Hancock's state of mind could have overcome the existence of state court litigation over the unpaid distributions or the regulatory framework overlaying the Partnership Agreement. Both claims on which the original Involuntary Petition was premised were clearly and objectively subject to bona fide disputes.

The Trust's bad faith, however, goes beyond the knowing disregard of the weakness of those claims and extends to its litigation tactics in this Court. The Trust attempted to relitigate the Cash Distribution Claim already pending in state court by initially including that claim as one

basis for the Involuntary Petition and then caused unnecessary expense and harassment to Blair House by waiting until the last minute to "waive" that claim. Only after the Court dismissed the petition and awarded compensatory and punitive damages to Blair House did the Trust attempt to withdraw the reference to the District Court, despite choosing this forum in the first instance. The Trust's actions establish a pattern of forum-shopping in an attempt to evade adverse rulings.

Given this conduct, the Court finds that punitive damages of approximately double the attorney's fees is entirely appropriate. The Trust's litigation tactics evidence a commitment to obtain a favorable ruling no matter the cost and no matter the forum. The Court is therefore convinced that $100,000 in punitive damages will serve as an appropriate deterrence for such an inappropriately litigious party.

**C. Ms. Hancock as the Liable Party.**

Section 303 (i) allows a punitive damage award against a petitioner. In this case, it was Ms. Hancock who, in her capacity as the trustee of the Trust, signed, under penalties of perjury, the petition and the amended petition which pitched Blair House involuntarily into bankruptcy. (D.E. 1 and 14). The Court agrees with her that the information provided by General Holdings about her financial condition is not properly admissible but nor is it relevant. The award is not issued against her in her individual capacity but against her in her capacity as the trustee of the Trust.

**CONCLUSION**

For the foregoing reasons, this Court awards damages in favor of Blair House and against Ms. Hancock in the amount of $48,000 under § 303(i)(1)(B) and $100,000 under § 303(i)(2)(B).

Dated:  February 18, 2022          /s/ Peter G. Cary
                                    Honorable Peter G. Cary
                                    United States Bankruptcy Judge