UNITED STATES BANKRUPTCY
COURT DISTRICT OF MAINE

IN RE:                              )
                                    )    Chapter 7
BLAIR HOUSE ASSOCIATES              )    Case No. 21-20110
LIMITED PARTNERSHIP.                )
                                    )

### DECISION AND ORDER ON TRUSTEE OF THE HILLMAN MATHER ADAMS NORBERG TRUST'S MOTION TO DISMISS

Mary F. Wolfson, in her capacity as the trustee of the Hillman Mather Adams Norberg Trust (the "Trustee" and the "Trust") moved the Court to dismiss the remainder of this involuntary bankruptcy case including "all proceedings regarding the assessment of attorney's fees and punitive damages as against the original petitioner in this case. . ." Docket Entry ("D.E.") 124.  General Holdings, Inc. ("General Holdings"), as the general partner of Blair House Associates Limited Partnership ("Blair House"), opposes the dismissal.  D.E. 129.  After due consideration of the parties' positions, the Court denies the motion.

By way of background, Ellen Hancock, who was previously the trustee of the Trustee, filed an involuntary bankruptcy petition on behalf of Blair House in May of 2021.  D.E. 1.  Upon the request of General Holdings, Inc. ("General Holdings"), the general partner of Blair House, the Court dismissed the petition, D.E. 22, and ordered that an award of attorney's fees and costs would issue in favor of Blair House and against Ms. Hancock.  D.E 31.  The Court then awarded Blair House attorney's fees of $48,000 pursuant to 11 U.S.C. § 303(i)(1)(B) and punitive damages of $100,000 pursuant to 11 U.S.C. § 303(i)(2)(B).  D. E. 41.  After an unsuccessful request for the Court to reconsider its award, Ms. Hancock appealed.  D. E. 50.  While the appeal was pending, Ms. Hancock died, and Ms. Wolfson was substituted as the Trustee for the Trust.

D.E. 84.  The Trustee also appealed this Court's decision to issue a writ of execution against her. D. E. 87.

On April 3, 2023, the District Court issued its decision on the two appeals.  D. E. 120. Although the District Court upheld this Court's decision on most grounds, it reversed the award of attorney's fees and punitive damages and remanded the case for the limited purpose of receiving additional evidence on Ms. Hancock's subjective intent in filing the involuntary petition.  Specifically, the District Court concluded that:

> [I]t was an abuse of discretion not to receive evidence on or consider a material factor - Hancock's subjective intent - in response to Hancock's requests to present evidence. Accordingly, the finding of bad faith and the award of punitive damages in this case are vacated and the case is remanded for further proceedings so that the Bankruptcy Court can receive additional evidence on the petitioner's subjective intent.  Further, as noted above, the Bankruptcy Court's award of attorney's fees is vacated and remanded so that the Bankruptcy Court can reconsider its award based on the additional evidence it receives.

D.E. 120, p. 54 (footnote omitted).

Following the remand, the Trustee requested the dismissal of this case on several grounds.  She maintains that certain provisions of the Blair House Limited Partnership Agreement (the "Partnership Agreement"), namely sections 7.1 and 6.8, militate against the award of attorney's fees and punitive damages.  She also reasons that because of Ms. Hancock's death, justice, fairness, and due process require dismissal of the case.  "[I]t is now impossible for the Trust to present evidence of her subjective intent on the remand of this case to this Court. Because (a) the District Court held that entertaining such evidence was a *necessary* condition for the entry of an award of both attorneys' fees and punitive damages in this case . . . ; (b) the Trust had requested leave to offer such evidence; and (c) such evidence was erroneously excluded by this Court, this case, and all proceedings regarding the assessment of attorneys' fees and punitive damages must now be terminated and dismissed with prejudice."  D.E. 124, pp. 2-3.  In support

2

of her motion, the Trustee submitted a declaration that she never spoke to Ms. Hancock about the Trust or any matter involving the Trust, and that she has no knowledge of Ms. Hancock's subjective intentions regarding any actions that she undertook on behalf of the Trust. D.E. 124-1. And, at the hearing on the motion to dismiss, the Trustee's counsel denied that any direct evidence of Ms. Hancock's subjective intent exists.

The Court is not convinced by these arguments.

First, the District Court affirmed this Court's determination that the Partnership Agreement did not prevent the award of fees and punitive damages. "Wolfson's argument is unpersuasive. She does not point to any authority for her assumption that the terms of the Partnership Agreement preempt General Holdings' ability to seek fees under section 303(i) or the Bankruptcy Court's statutory authority to award fees. Nor could these provisions be characterized as a waiver of General Holdings' right to seek attorney fees and punitive damages." D.E. 120, p. 40.

Also, her contention that it is impossible to present evidence as to Ms. Hancock's subjective intent because of her death contradicts her earlier assertions about evidence she planned to adduce that relate to her subjective intent and to her argument that the commencement of the involuntary petition was not in bad faith. For example, in her objection to General Holdings' request for fees and punitive damages, Ms. Hancock and her counsel stated that "when and if this matter goes to trial, Ms. Hancock, as Trustee, will present evidence in the form of expert testimony confirming that her belief that the involuntary petition was warranted was entirely justified and not motivated by malice." D.E. 34, p. 5. Further, in Ms. Hancock's motion for the Court to reconsider its award, she and her counsel represented that "the Trust believes that any disputes, such as they are, were not motivated by law or fact, but by the bad

3

faith of Rosa Scarcelli and . . . [General Holdings]." D.E. 43, p. 13.  While such evidence may not be <u>direct</u> evidence of Ms. Hancock's "subjective intent," it is related.

Further, the Trustee's dismissal request flies in the face of the dictates of the District Court.  When the District Court instructed this Court to take evidence regarding Ms. Hancock's subjective intent, it knew that Ms. Hancock had died.  "Taking such evidence in this case may be admittedly difficult in light of Ellen Hancock's death.  Hancock, however, was bringing this case in her capacity as Trustee of the Hillman Mather Adams Norberg Trust. Her successor Trustee, Wolfson, who has initiated the *Hancock* appeal, may be able to shed light on the motivations and objectives behind bringing the involuntary petition." D.E. 120, p. 54, n. 23.  If the Trustee believed that as a matter of law this instruction from the appellate court to this Court was incorrect, she had a remedy – further appeal – that she chose not to utilize.

At this point, the Court does not know what evidence of Ms. Hancock's subjective intent the parties plan to produce.  As General Holdings points out in its opposition to the motion to dismiss, the Trustee's declaration does not foreclose the possibility that any such evidence exists.  The discovery process is ongoing.  Given Ms. Hancock and her counsel's prior representations to the Court, perhaps they preserved <u>indirect</u> evidence in anticipation of the contested evidentiary hearing that they requested this Court permit.  Testimony from other litigation or information in the Trust records might shed light on her intentions at the time of the filing of this case.  Ms. Hancock may have communicated with others, such as her financial and legal advisors or Ms. Gleichman, about her plans and reasons for filing an involuntary case against Blair House.  And, even if, contrary to the Trust's earlier representations, absolutely no evidence relating to Ms. Hancock's subjective intent exists, the Court does not agree that fairness and justice require

4

dismissal.[1] For example, the Court is not aware of any precedent that would require dismissal in these circumstances where the Trust had the opportunity, ability, and incentive to preserve evidence that it believed would support its position but failed to do so.

Additionally, the Court, as the trial court on remand, is duty bound to follow the specific mandates of an appellate court. *See* 18B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4478.3 (3d ed. 2023 update) ("A specific mandate direction binds the lower court. . ."); *See also* United States v. Correy, 773 F.3d 276, 281 (1st Cir. 2014) (In the context of remand of criminal sentencing decision); United States v. Campbell, 168 F.3d 263, 265 (6th Cir. 1999) ("Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate.").

The Trustee's motion to dismiss is denied so that the District Court's instructions for this Court to reconsider its award of fees and damages based upon additional evidence as to Ms. Hancock's subjective intent can be followed.

Dated: May 26, 2023                                              /s/ Peter G. Cary

                                                                 Honorable Peter G. Cary
                                                                 United States Bankruptcy Judge

---

[1] The Trustee also argues that due process requires dismissal, but the District Court held that she waived that argument. D.E. 120, p 43, n. 19.