**UNITED STATES BANKRUPTCY**
**COURT DISTRICT OF MAINE**

IN RE:                                    )
                                          )    Chapter 7
**BLAIR HOUSE ASSOCIATES**        )    Case No. 21-20110
**LIMITED PARTNERSHIP**.          )
                                          )

**ORDER ON REMAND**

On April 12, 2022, Ellen M. Hancock, as Trustee of the Hillman Mather Adams Norberg

Trust (the "Trust"), appealed three orders to the District Court: (1) the Order on Request for

Attorneys' Fees dated August 17, 2021 directing Blair House Limited Partnership ("Blair

House") to file an affidavit of attorney fees incurred by its General Partner, General Holdings,

Inc. ("General Holdings")  and a request for punitive damages in a sum certain (Docket Entry

("D.E.") 31); (2) the Further Order on Request for Award of Attorney's Fees and Punitve

Damages dated February 18, 2022 directing the Trust to pay to Blair House attorney fees in the

amount of $48,030 and punitive damages in the amount of $100,000 (D.E. 41); and (3) the Order

Denying Motion to Reconsider, Alter or Amend Judgment Pursuant to Rules 9014 and 9023 of

the Federal Rules of Bankruptcy Procedure and Rule 59(e) of the Federal Rules of Civil

Procedure dated March 31, 2022, denying the Trust's request to vacate or reduce the awards set

forth in the February 18, 2022 order (D.E. 47).  Ms. Hancock died while the appeal was pending,

and Mary F. Wolfson (the "Trustee") was substituted as the trustee for the Trust.  D.E. 84.

On March 31, 2023, the District Court issued a Judgment vacating the award of attorney

fees and punitive damages and remanding the matter to this Court for further proceedings.  D.E.

121.[1]  The District Court found that this Court erred in refusing to consider evidence Ms.

---

[1] Ms. Hancock's appeal of the three orders identified above was assigned Case No. 2:22-cv-00099-JDL.  The
Trustee separately appealed another order, which appeal was assigned Case No. 2:22-cv-00194-JDL.  By separate
Judgment, the District Court dismissed the appeal by the Trustee as moot.  D.E. 122.  The March 31, 2023 decision

Hancock said she could offer establishing her subjective intent concerning the commencement of this involuntary proceeding. D.E. 120, p. 54. And, on remand, it directed this Court to receive any additional evidence the Trust might offer concerning Ms. Hancock's subjective intent. D.E. 120, p. 42. Noting that bad faith is a factor in assessing attorney fees—though not a prerequisite to such an award—the District Court also vacated the fee award so this Court could reconsider the amount of that award after taking into account any new evidence presented by the Trust and/or any additional fees incurred by Blair House as a result of the further proceedings. Id.

Upon consideration of the District Court's decision and the arguments of the parties upon remand, the Court reinstates its award of punitive damages of $100,000 and orders the submission of an updated attorney fees and costs affidavit so the Court can determine an appropriate award under 11 U.S.C. § 303(i)(1).

**I.      Analysis**

A. Punitive Damages

Despite the clearly countervailing positions of the parties, there is at least one thing that they, and this Court, agree upon. As the Trustee asserts in her reply brief: "the whole purpose of the remand ordered by the District Court . . . [is] to give the Trust the *opportunity* to present additional evidence related to Ms. Hancock's subjective intent and beliefs related to her state of mind . . ." D.E. 145, p. 3 (italic in the original.). The District Court acknowledged the difficulties Ms. Hancock's death could present on remand but suggested that the Trustee, who litigated the appeal, "might be able to shed light on the motivation and objectives behind the involuntary petition." D.E. 120, p. 54, n. 23.

---

contained the District Court's findings with respect to both appeals. This order only addresses those matters the District Court directed this Court to address on remand in Case No. 2:22-cv-00099-JDL.

However, other than the evidence contained in the declaration of Mr. Poliquin at D.E.

147, the only additional evidence presented by the parties on remand is contained in the

Stipulation of Fact, which has 18 paragraphs and three exhibits.  D.E. 140.  Four of the

paragraphs state that the Trustee does not possess, control, or have knowledge of relevant

documents or records regarding Ms. Hancock's intent.  D.E. 140, ¶¶ 1, 3, 7, 8.  Three speak to

the actions of General Holdings, Blair House and the Trust's counsel regarding discovery or the

preservation of evidence.  D.E. 140, ¶¶ 4, 5, 6.  One establishes that the Trustee does not rely

upon the "advice of counsel" defense.  D.E. 140, ¶ 2.  Another concedes that to the extent that

any files relating to Ms. Hancock's subjective intent ever existed, the executor of her estate

destroyed them.  D.E. 140, ¶ 9.

The remaining nine paragraphs and the three exhibits of the Stipulation relate to Blair

House's 2020 tax returns.  D.E. 140, ¶¶ 10 – 18.  The three exhibits are (1) a July 19, 2021 letter

from an accounting firm to Blair House attaching client copies of Blair House's 2020 federal and

state partnership tax returns for the year 2020; (2) an October 29, 2021 letter from the accounting

firm to Blair House enclosing amended 2020 federal and state partnership tax returns for Blair

House; and (3) a general footnote purportedly attached to the Trust's 2020 tax return dated

September 28, 2021 stating:

> THE TRUST DID NOT RECEIVE PARTNERSHIP K-1S BEFORE THE
> FILING DEADLINE DUE TO THE PARTNERSHIPS ARE IN COURT.  THE
> TRUST WILL PROMPTLY AMEND THIS RETURN AS SOON AS THEY
> RECEIVE THEIR PARTNERSHIPS K-1S.  WE DON'T ANTICIPATE ANY
> TAX DUE TO PASSIVE LOSS CARRYOVERS.

Id., Exhs., 1-3.

None of this evidence provides any insight as to Ms. Hancock's subjective intent as of the

petition date.  As for the paragraphs and exhibits relating to the 2020 tax returns, they lack

temporal relevance to a determination of Ms. Hancock's subjective intent at the time she directed

the Trust's counsel to file the involuntary petition on May 5, 2021.  There is no evidence that

either General Holdings or its affiliate, Stanford Management, sent the 2020 tax returns to Ms.

Hancock or anyone else representing the Trust before October 31, 2021; more than five months

after she filed the involuntary petition.  D.E. 140, ¶ 18.  Indeed, it appears the earliest Ms.

Hancock could possibly have received the first draft of the tax return was July 19, 2021, which is

still more than two months after the involuntary proceeding commenced.  As for the general

footnote, to the extent one can assign any evidentiary value to this excerpted attachment, it

merely shows the existence of a dispute sometime prior to the filing of the Trust's partnership

return on September 28, 2021.

The Trust's inability to offer additional evidence at this stage is puzzling.  While the

Court obviously cannot hear testimony from Ms. Hancock or, apparently, examine her

documents and files, Ms. Hanock specifically referenced other supporting evidence when she,

through her counsel, requested an evidentiary hearing in earlier proceedings.  For example, Ms.

Hancock stated her intention to present expert testimony.  D.E. 34, p. 5 ("But in any case, when

and if this matter goes to trial, Ms. Hancock, as Trustee, will present evidence in the form of

expert testimony confirming that her belief that the involuntary petition was warranted was

entirely justified and not motivated by malice.").  Moreover, Ms. Hancock, through her counsel,

asserted that it was Rosa Scarcelli, General Holdings' principal, and not Ms. Hancock, who

created the bona fide dispute by allegedly refusing to dissolve Blair House in breach of her

fiduciary duties.  D.E. 43, p. 13 - 14.  Notwithstanding these representations, to this Court's

knowledge, the Trustee did not seek to depose, or request documents from, Ms. Scarcelli despite

being granted an opportunity to conduct discovery on remand.  D.E 127.  She also did not offer

Ms. Scarcelli's testimony into evidence.

The Court therefore concludes that the Trustee has no additional relevant evidence to

offer on Ms. Hancock's subjective intent.  She admits as much in her brief where she asserts . . .

"the correct inference of the subjective intent of Ms. Hancock in respect of the filing of the

involuntary petition may be derived from the Creditor's Brief, the Objection, the Stipulation, and

the offer of proof made by the Trust which was wrongfully rejected."  D.E. 143, p. 5. [2]  As the

brief and the Stipulation do not offer any relevant evidence, the Court is left solely with the

record upon which it previously relied in finding bad faith, supplemented only by whatever

conclusions the Court might draw from the Trust's failure to preserve or offer additional

evidence.

Rather than providing the additional evidence for which this case was remanded, the

Trustee rehashes arguments previously rejected by this Court in awarding the punitive damages

in the first instance; (1) that Ms. Hancock's interpretation of the limited partnership agreement

was entirely reasonable; and (2) that the Trust had no motive to act in bad faith because the filing

of the involuntary petition did not interfere with Blair House's business operations.  Neither

argument was persuasive earlier in this proceeding and they continue to be unavailing on

remand.  Ms. Hancock's interpretation of the limited partnership agreement might be entirely

reasonable but that does not mean that General Holdings' alternative interpretation was patently

unreasonable.  In fact, it is these two differing interpretations which give rise to the bona fide

dispute which precluded the filing of the involuntary petition.  As for motive, this Court

---

[2] The Trustee's reference to an "offer of proof" is confusing.  After scouring the record, this Court cannot find a single offer of proof made by Ms. Hancock in earlier proceedings.  Although, in her initial brief, the Trustee claims multiple times that this Court improperly rejected her offers of proof, she concedes in her reply brief that she never actually made a single offer of proof.  D.E. 145, p. 5.

determined that the Trust commenced the involuntary petition to force Blair House's dissolution

and a subsequent distribution of the insurance proceeds.  Whether or not Blair House's business

operations were impacted is as irrelevant on remand as it was in the earlier proceedings.

The Trustee attempts to distract the Court from the District Court's limited mandate on

remand by arguing that Blair House bears the burden of establishing Ms. Hancock's subjective

intent.  The argument is an irrelevant diversion.  In seeking an award for damages, the putative

debtor bears the burden of proving bad faith by a preponderance of the evidence.  In re

Synergistic Techs., Inc., 2007 WL 2264700, at *6 (Bankr. N.D. Tex. Aug. 6, 2007) (collecting

cases);  In re Structure & Design, Inc., 156 B.R. 3, 4 (Bankr. D. Me. 1993); In re Betteroads

Asphalt LLC, 608 B.R. 7, 15 (Bankr. D. P.R. 2019) ("An involuntary petition has a presumption

of good faith, and it is the burden of the debtor to prove under the totality of the circumstances

that the filing was in bad faith.").  This Court previously held, however, that Blair House

satisfied its burden of proof by pointing to the myriad inconsistencies and burdensome litigation

tactics in the involuntary petition and the Trust's subsequent filings.  D.E. 41.  As the District

Court acknowledged, "Hancock's submissions unquestionably constitute probative evidence for

determining whether Hancock had acted in bad faith."  D.E. 120, p. 51.

The Trustee misses the mark when she argues that Blair House bears the burden of

presenting additional evidence relating to Ms. Hancock's subjective intent.  The District Court

vacated the punitive damages award because this Court did not consider evidence Ms. Hancock

sought to introduce; not because this Court's bad faith finding was unsupported by the record.[3]

The primary purpose of the remand is to permit the Trustee to present evidence of Ms.

---

[3] In light of its decision to vacate the punitive damages award, the District Court expressly declined to rule on the
Trustee's argument that "a finding of bad faith was not justified under the circumstances of this case."  D.E. 120, p.
43, n. 19.

Hancock's subjective intent. As discussed above, the Trustee has been unable, or is unwilling, to do so.[4]

No new, relevant evidence having been introduced, this Court reaches the same conclusions on the same record. Ms. Hancock, in her capacity as the then trustee of the Trust, acted in bad faith in filing the involuntary petition. Accordingly, the Court hereby reinstates the award of punitive damages in the amount of $100,000.

B.  Attorney Fees

The District Court also instructed this Court to reassess its award of attorney fees upon remand. The District Court suggested two reasons why this Court may find such an adjustment appropriate.

First, "[a]lthough a finding of bad faith is not required for an award of attorney fees under section 303(i)(1), *id.*, a petitioner's subjective intent, as well as the existence of bad faith, may be relevant to the Bankruptcy Court's decision to award attorney fees." D.E. 120, p. 42 (*citing* In re K.P. Enter., 136 B.R. 174, 177 (Bankr. D. Me. 1992)). If the Trustee had successfully introduced new evidence which either undermined this Court's finding of bad faith or, alternatively, established that Ms. Hancock's conduct was even more egregious than previously thought, either an upward or downward adjustment to the fee award would be in order. Since the

---

[4] The Trustee contends that the Trust was prejudiced by General Holdings' failure to ensure the preservation of Ms. Hancock's files and documents following her death. This argument is a nonstarter. Ms. Hancock appealed the punitive damages award on the grounds that this Court erred in declining her request for an evidentiary hearing. She and her counsel should have known that, if she succeeded on appeal, this matter would be remanded for further evidentiary hearings. When Ms. Hancock died, it was not General Holdings' responsibility to preserve any such evidence. The Trustee was promptly named Ms. Hancock's successor and continued to litigate the appeal. She should have ensured that any relevant evidence in Ms. Hancock's possession and control at the time of her death was preserved. See, Nansamba v. N. Shore Med. Ctr., Inc., 727 F.3d 33, 40 - 41 (1st Cir. 2013). The Trustee cannot sit idly by while documents are destroyed and then claim prejudice. Moreover, even if General Holdings did bear responsibility, the Court finds by virtue of Mr. Poliquin's uncontested declaration that General Holdings took all steps reasonably necessary to preserve evidence relevant to this issue. D.E. 147.

Trustee did not introduce any new relevant evidence, this Court finds that no adjustment to the amount of attorney fees awarded for prior proceedings is necessary or appropriate at this time.

Second, the District Court suggested that this Court might want to reconsider the amount of the award to include fees Blair House incurred in connection with the proceedings on remand. During these most recent proceedings, the Trustee continued to assert contradictory statements and positions. The Trustee repeatedly agued in her opening brief before this Court that it had refused to accept "offers of proof." D.E. 143, pp. 2, 4 and 5. She then backtracked in her reply brief, stating that "It is true that no 'offer of proof' has been made . . ." D.E. 145, p. 5. The Trustee also sought to introduce documents into evidence which were irrelevant (the draft and amended 2020 tax returns for Blair House) and unauthenticated (the general footnote to the Trust's tax return). The introduction of this "evidence" added nothing to the merits of the Trust's defense but created additional cost and expense to Blair House.

Finally, this entire remand was fueled, at least in part, by Ms. Hancock's, and then her successor's, claims that this Court refused to hear evidence which included, at least in part, expert testimony and evidence of Ms. Scarcelli's own bad faith. On remand, the Trustee failed to present any relevant testimony and did not once mention expert testimony or seek discovery from Ms. Scarcelli. In fact, immediately upon remand, the Trustee unsuccessfully moved to dismiss the case on the grounds that no such evidence exists. D.E. 124. In support of her motion, the Trustee submitted a declaration that she never spoke to Ms. Hancock about the Trust or any matter involving the Trust, and that she has no knowledge of Ms. Hancock's subjective intentions regarding any actions that she undertook on behalf of the Trust. D.E. 124-1. Additionally, at the hearing on the motion to dismiss, the Trustee's counsel denied that any

8

evidence of Ms. Hancock's subjective intent existed; a position that runs counter to Ms.

Hancock's and the Trustee's earlier assertions and to the District Court's directives on remand.[5]

This Court is left with the continued impression that Ms. Hancock's hollow references to

"evidence," echoed by her successor, represent more delay tactics by the Trust. Meanwhile,

Blair House incurred attorney fees in connection with a scheduling conference, the Trustee's

unsuccessful motion to dismiss, a stipulation relating to largely irrelevant facts and documents,

and briefing. Under these circumstances, this Court finds that Blair House is entitled to the

attorney fees it incurred during these proceedings on remand, in addition to the $48,030 in

attorney fees previously awarded.

## II. Conclusion

For the foregoing reasons, the Court awards punitive damages in favor of Blair House

and against Ms. Wolfson, in her capacity as Trustee, in the amount of $100,000. Blair House

shall submit an attorney fees affidavit within 28 days so the Court can determine the appropriate

fee award under 11 U.S.C. § 303(h)(1).


Dated: January 29, 2024                          /s/ Peter G. Cary
                                                 Honorable Peter G. Cary
                                                 United States Bankruptcy Judge

---

[5] The Trust's counsel stated: "Now, what Justice [sic] Levy did not know is that in actuality there is no evidence of her subjective intent." Audio file at D.E. 131, 3:18 – 3:27.